[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter involves the appeal by thirty-eight (38) condominium owners relative to the tax assessment the Town of Middlebury has placed on each such unit on said town's grand lists of October 1, 1993 and October 1, 1994. The plaintiffs commenced this action by a complaint dated April 4, 1994 with a return date of April 30, 1994. The defendants filed an answer on June 10, 1994. Then the plaintiffs filed amended complaints dated June 14, 1995 and August 3, 1995. The defendants filed amended answers also dated July 14, 1995 and August 15, 1995.
The plaintiff Tyler's Cove Association, Inc is a condominium association comprised of thirty-eight unit owners. The defendants are the Town of Middlebury, (Town) Edmund A. CT Page 10130 Corapinski, the Assessor for the Town of Middlebury (Corapinski) and Gerald Raimo, a member of the Board of Tax Review for the Town of Middlebury (Raimo.) Mr. Raimo was the chairman of the Board of Tax Review in 1991 and 1992 when the Town went through a reevaluation process.
The plaintiff, as previously stated, consists of thirty-eight owners of individual cottages situated on approximately 16.5 acres of land adjacent to Sandy Beach and Lake Quassapaug in the Town of Middlebury. The property on which these units or condominiums are located was previously owned by Russell F. Tolles as Trustee under the Will of Ada S. Lamphier and Alice L. Tolles (Exhibits 46A, 46B, 46C). Raymond LeBlanc and Edward Borowski, condominium owners, testified that they purchased their units originally from Russell F. Tolles in 1974 and 1976 for $11,500.00 and $15,000.00 respectively. They testified that they then leased the land on which their units were built from Mr. Tolles on a year to year basis. They testified the land rent varied from year to year. This method of ownership was apparently the same for all units. In 1987 or prior thereto, Mr. Tolles offered to sell the approximately 16.5 acres of land to all of the unit owners. Thereafter the then owners of the units formed a corporation, Tyler Cove, Inc. and purchased said 16.5 acres for $1,926,000.00 in 1987 (Exhibits 46A, 46B, and 46C). This price was agreed to by the attorneys for each party and was arrived at by using the conveyance tax paid on the aforementioned exhibits. In 1989 Tyler's Cove, Inc. conveyed said 16.5 acres to Tyler's Cove Association, Inc., the plaintiff in this matter (Exhibit G).
The town underwent a revaluation of property values in 1991 and 1992 which revaluation became effective on the Grand List of October 1, 1992. As a result of that reevaluation, the tax assessments of the plaintiff units increased tremendously. For example, Raymond and Helen LeBlanc who own unit #38 paid taxes of $831.46 on the tax list of October 1, 1990 (Exhibit B). After the revaluation process became effective, the taxes on Unit #38 were $2,047.86 on the Grand List of October 1, 1993 (Exhibit A). That's a tax increase of $1,216.40. William and Joan Calvert who owned Unit #30 paid taxes of $711.43 on the Grand List of October 1, 1991. (Exhibits E and F). After revaluation they paid taxes of $1,957.48 on the Grand List of October 1, 1993 (Exhibit D). That is an increase of $1,246.05. Units #30 and #38 are a representative sample of the tax increases each unit owner experienced as a result of the Town's CT Page 10131 property revaluation. The assessment for tax purposes is based on 70% of the fair market value of each property in the town. The total fair market value of the plaintiff's property including all thirty-eight condominium units as stated by the Town relative to the Grand List of October 1, 1993 was $4,545,600.00. Seventy (70%) percent of $4,545,600.00 is $3,181,900 which was the assessment figure used by the Town for all the plaintiffs' properties and condominiums on the Grand List of October 1, 1992 and all subsequent years.
The reevaluation process was completed under the direction of the Town's Assessor, Edmund Corapinski. The company Mr. Corapinski used to complete this reevaluation was Lesher-Glendinning Municipal Services, Inc. The president of that company was a John J. Valente who testified in this matter.
The plaintiffs called Robert Nocera as a witness. Mr. Nocera did an appraisal of the 16.5 acres of land on which the said 38 condominiums are located. He testified that he was retained by the plaintiffs to appraise the land only. He stated he could find no land in Middlebury that was approved for condominiums so he had to look elsewhere for such land. (Exhibit J. page 27). He stated that in his opinion the land on which the plaintiffs' thirty-eight condominium units are located has a fair market value of $660,000.00 or $40,000.00 per acre. He stated when you divide 38 condominiums into $660,000.00 you find that the fair market value for the land for each such unit is $18,000.00 per unit. Mr. Nocera used comparable sales of land approved for condominiums in towns other than Middlebury and for land sales other than condominiums in the Town of Middlebury. He stated 70% of the fair market value of the land of $660,000.00 was $462,000.00 (Exhibit J).
Mr. Nocera testified that the plaintiffs' land would not allow condominiums to be built thereon under the Town's present zoning regulations. He stated the plaintiffs' land was long and narrow with a steep incline from the road to the lake. Other factors he considered in arriving at his appraised figure were the lake frontage of the land, a private road that runs through the property, the fact that some units have no direct vehicular traffic to them and that many of the units have no septic systems or wells. Of the 38 units, Mr. Nocera testified 14 had both a septic system and well, 4 had a septic system and no well, 1 unit has a well and no septic system, 14 units had neither a well or septic system, and for 5 units, he could not CT Page 10132 say if they had wells or septic systems. Mr. Nocera said his appraisal was based on unimproved land zoned for condominiums. His appraisal did not add any value to a unit because of an amenity, i.e. a road leading to and used by a unit, while the Town's appraisal did add value to a unit for such an amenity. He also testified he did not consider the sales with the plaintiffs' association which took place in the last five years because he only valued the land.
Edmund Corapinski, the Assessor for Middlebury, testified. He stated that as the assessor he had the final authority to place a value on a particular property. He stated that he physically reviewed every property in Middlebury for this reevaluation including all 38 units of the plaintiff. He stated he used the comparable sales method along with a listing of all items on a particular property. He used comparable sales from within the plaintiffs' association. Since the reevaluation date of October 1, 1992, three sales of units in the plaintiffs' association have taken place. (See Exhibits 51, 45, 43, 44, l33). Unit 15 was sold on January 25, 1993 for $125,000.00 from a husband to his wife. The husband testified and stated that this transfer was done for estate planning purposes. The husband stated he purchased this unit originally in 1989 for $145,000.00. (See Exhibit 51). After reevaluation the Town listed that property with a fair market value of $112,400.00 and a 70% assessed value of $78,710.00. Unit #19 was sold on August 3, 1993 for $122,500.00. The Town listed the fair market value of this property at $99,000.00 with a 70% assessed value of $69,280.00 as of October 1, 1992. (Exhibit 44) Unit #41 was sold on October 13, 1993 for $110,000.00. The Town listed the fair market value of this property at $109,200.00 with a 70% assessed value $76,410.00 as of October 1, 1992. (Exhibit L33) Between October 2, 1989 and October 1, 1992 there were approximately five other sales of units within the plaintiff's association. In each instance the Town placed a fair market value on each property which was less than the sales price.
The plaintiff made much of the fact that the Town's field cards (Exhibits L1-L33, 41, 42, 43, 44 and H) list a substantial portion of each condominium's value under the heading "land". The thirty units that bordered the lake front had land valued at $85,000.00 for each such unit and the eight condominiums that did not border the lake had a value of $65,000.00 under the heading "land" on the assessors field card. Mr. Corapinski stated that the field cards were obtained from Lesher CT Page 10133 Glendinning Municipal Services, Inc. and that he used the regular residential field cards to list the value of the plaintiffs' units because that card allowed for 200 entries or items and the standard condominium card only allowed for 30 such entries or items. In effect, he testified that he used the regular residential field card for the plaintiffs' units because they were more appropriate as these condominiums were more like individual cottages or homes than condominiums. Mr. Corapinski and John J. Valente, the President of Lesher-Glendinning Municipal Services, Inc., continually testified that they did not value the land relative to the subject units. Mr. Corapinski stated that he subtracted the unit from the purchase price or fair market value and what remained was the value of the condominium interest relative to that unit and that interest included the land. Mr. Corapinski testified that when valuing the plaintiffs' units, he did not consider if a unit had a well or septic system because neither were a significant factor in the sales that took place within the plaintiff's association. He stated that on the field cards "land value" meant condominium interest value and that value was the value attributed to legal rights of ownership which includes all other pluses that attach to a given condominium unit. He stated that the $351,000.00 which said 16.5 acres was assessed at when Russell Tolles and Alice Tolles owned the land reflected a 1982 value. That was 100% valuation with an assessment (70%) value of $245,700.00. 1982 was the year that the Town went through its last reevaluation prior to 1992. He stated the value of the property increased because the units were condominiums and also due to 10 years of inflation. The plaintiffs' claims that the subject land is assessed at $190,000.00 per acre. Mr. Corapinski stated that per acre value is not important relative to condominium units.
John J. Valente the president and owner of Lesher-Glendinning Municipal Services, Inc., the firm that the Town retained to do the reevaluation of properties also testified. He stated no one ever told him what value to put on any property. He stated his company started doing the reevaluation in the Spring of 1991. He stated he did not use the condominium field card to value the plaintiff's units because these units were unusual condominiums in that they were really houses. He stated he used the comparable sales method to establish fair market value as that was the most reliable method to arrive at a fair market value. In valuing the land he used the "Residual Value Approach Method". Using this method he looked at the CT Page 10134 sales prior to October 1, 1992 and he removed the contributory value of the building using the cost approach and the value that was left was the residual value of the condominium interest. He then took 70% of that value for assessment purposes. He stated Mr. Nocera only valued 16.5 acres of land but you can't buy or sell the 38 units of the plaintiff as one property. He stated he valued each condominium unit separately because that is how they are sold. Mr. Valente appraised the individual 38 condominiums in the plaintiff's association in May, 1995 (Exhibits 2 to 39). He stated he made no adjustment in value for septic systems and/or wells or the lack thereof. He also said this was due to the fact that in his opinion based on analyzing comparable sales wells and septic systems or the lack thereof did not effect value. It is hard for the court to imagine that the presence of a good well and/or a functioning septic system does not having a positive effect on the value of properties such as these. Mr. Valente also testified about what he called "Amenity Value". He stated that is the value outside of the building. He testified "amenity value" equals use of land. He stated "amenity value" and "condominium interest value" are the same.
The court viewed these properties at the commencement of trial along with the attorneys for each party and some of the parties themselves.
Connecticut General Statute #12-63 sets forth the rule of valuing property. That statute reads as follows:
 Sec. 12-63. Rule of valuation. The present true and actual value of land classified as farm land pursuant to section 12-107c, as forest land pursuant to section 12-107d, or as open space land pursuant to section 12-107e shall be based upon its current use without regard to neighborhood land use of a more intensive nature, provided in no event shall the present true and actual value of open space land be less than it would be if such open space land comprised a part of a tract or tracts of land classified as farm land pursuant to section 12-107c. The present true and actual value of all other property shall be deemed by all assessors and boards of tax review to be the fair market value thereof and not its value at a forced or auction sale. CT Page 10135
The Town sends each condominium owner in the plaintiff's association a tax bill each year which includes the 70% value of their condominium building plus the 70% value of a one-thirty-eighth (1/38) interest in the whole project. The plaintiff association gets no tax bill.
The plaintiff's association predecessor Tyler's Cove, Inc. purchased the land in October 1987, and paid the sellers $1,926,000.00 for it. The plaintiff now claims that the Town has valued the land that the Association's Condominiums are located on at a 100% value of $3,070,000.00 for an assessment value (70%) of $2,149,000.00. The plaintiffs' appraiser, Robert Nocera, appraised the same land at a 100% value of $660,000 or $462,000.00 at 70% assessment value. The total value of the assessment for all 38 condominiums and amenities relative thereto as valued by the Town on October 1, 1993 is $4,545,600.00 and a value based on a 70% assessment of that figure is $3,181,900.00. These figure were agreed to by the respective attorneys at the conclusion of the trial. The town has requested that the court value each individual condominium in the plaintiffs' association if it is going to sustain the plaintiff's appeal. However, the court does not feel that it has to value each individual unit if it sustains the appeal because the issue in this appeal is the value of the 16.5 acres of land that these condominiums are situated on. Whether you call it land value as the plaintiff does or "amenities value" or "condominium interest value" as the defendant does is immaterial.
After hearing the evidence, the court finds that the plaintiff sustained its burden of proof as to counts two and four of their amended complaint dated August 3, 1995. The court finds that each condominium unit's fair market value should be reduced by $10,000.00 per unit with the resultant 70% assessment value being reduced by $7,000.00 per unit for the grand list years of October 1, 1993 and October 1, 1994.
As to counts one and three of the plaintiff's amended complaint dated August 3, 1995, the court finds the issues for the defendant as the plaintiff did not sustain its burden of proof as to those counts.
Judgment may enter accordingly.
WILLIAM J. SULLIVAN, J. CT Page 10136